Roger BENNETT and Richard Allen Combs, on behalf of themselves and all others similarly situated in the State of Tennessee,

v.

VISA U.S.A. INC., and Mastercard International, Inc.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Feb. 9, 2006 Session.

March 27, 2006.

Permission to Appeal Denied by Supreme Court Aug. 21, 2006.

See also 396 F.3d 96.

William T. Gamble, Kingsport, Tennessee, Stephen V. Bomse, San Francisco, California, and Robert C. Mason, New York, N.Y., for appellant Visa U.S.A. Inc.

S. Morris Hadden, Kingsport, Tennessee, R. Dale Grimes, Nashville, Tennessee, and Kenneth A. Gallo, Washington, D.C.,

for appellant MasterCard International Incorporated.

Gordon Ball, Knoxville, Tennessee, for appellees Roger Bennett and Richard Allen Combs.

## OPINION

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Plaintiffs' action charged defendants with violation of the Tennessee Trade Practices Act, the Tennessee Consumer Protection Act, and unjust enrichment for monies had and received. Responding to Motions to Dismiss, the Trial Court dismissed the statutory violations claims, but retained jurisdiction over the common law violation claims. We granted the parties' interlocutory appeals and dismiss the action.

## BACKGROUND

In October of 1996, Wal–Mart and other merchants asserted claims under federal anti-trust law against Visa U.S.A. and MasterCard International (the "Defendants") in federal court. The merchants alleged that the Defendants' requirement that merchants who accepted the Defendants' credit cards to also accept the Defendants' debit cards was an illegal "tying arrangement" and an attempt to monopolize the debit card market. On February 22, 2000, the federal court certified a class of roughly four million merchants. *In re Visa Check/MasterMoney Antitrust Litigation,* 192 F.R.D. 68 (E.D.N.Y.2000), *aff'd,* 280 F.3d 124 (2d Cir.2001), *cert. denied,* 536 U.S. 917, 122 S.Ct. 2382, 153 L.Ed.2d 201 (2002). On April 1, 2003, the Defendants' motions for summary judgment were denied in their entirety. *In re Visa Check/Mastermoney Antitrust Litigation,* No. 96-CV-5238 (JG), 2003 WL 1712568 (E.D.N.Y. April 1, 2003). By April 30, 2003, both of the Defendants had agreed to settle with the merchants, and the resulting settlement agreements were approved by the federal trial court on December 19, 2003. *In re Visa Check/Mastermoney Antitrust Litigation,* 297 F.Supp.2d 503, 507–08 (E.D.N.Y.2003), *aff'd sub nom., Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d 96 (2d Cir.2005), *cert. denied sub nom., Leonard's Pizza by the Slice, Inc. v. Wal–Mart Stores, Inc.,* 544 U.S. 1044, 125 S.Ct. 2277, 161 L.Ed.2d 1080 (2005).

## PLEADINGS

This action began on May 20, 2003, when plaintiffs filed a Class Action Complaint against the defendants in the Chancery Court for Washington County. Plaintiffs filed individually and on behalf of Tennessee consumers similarly situated. The Complaint averred that thousands of merchants throughout Tennessee accept Visa and MasterCard credit cards as a form of payment, and that defendants had effectively forced these merchants to accept debit cards issued by the defendants' bankcard associations as a condition of accepting defendants' credit cards. The Complaint asserted that this "tying arrangement" increased the merchants' operating costs and that these increased costs were passed on to all consumers in the form of inflated prices.

Plaintiffs averred that they are debit card holders who have used such cards to purchase goods from merchants located throughout Tennessee, and sought "to represent a Class of all Tennessee consumers who have purchased goods from [m]erchants who accept Visa and MasterCard credit cards as a form of payment, and have been forced to accept debit cards issued by members of the Visa and MasterCard bankcard associations as a condi-

tion of accepting Visa and MasterCard credit cards."

The Complaint concluded that the defendants' conduct violated the Tennessee Trade Practices Act ("TTPA") and the Tennessee Consumer Protection Act ("TCPA"), and that the defendants' conduct supports claims for unjust enrichment and money had and received.

On May 11, 2004, the defendants filed a Motion to Dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure requesting that the Chancery Court dismiss all of the plaintiffs' claims. The Chancery Court then entered an Opinion and Order dismissing the plaintiffs' claims under the TTPA and TCPA, and denied defendants' Motion to Dismiss the common law claims. The Trial Court then granted both parties interlocutory appeals pursuant to Rule 9, Tenn. R.App. P.

This Court granted both applications.

## THE APPEALS

The issues on appeal are:

1. Whether the trial court erred in dismissing the Plaintiffs' TTPA claim pursuant to Tenn. R. Civ. P. 12.02(6).
2. Whether the trial court erred in dismissing the Plaintiffs' TCPA claim pursuant to Tenn. R. Civ. P. 12.02(6).
3. Whether the trial court erred in not dismissing the Plaintiffs' claims for Unjust Enrichment and Money Had and Received pursuant to Tenn. R. Civ. P. 12.02(6).
4. Whether the trial court erred in not dismissing the Plaintiffs' claims for injunctive relief as moot.
5. Whether the trial court erred in not transferring this action to Circuit Court.

A Motion to Dismiss filed pursuant to Tennessee Rule of Civil Procedure 12.02 tests the legal sufficiency of the complaint, not the quality of plaintiff's proof. *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 710 (Tenn.2003). We are required to "construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts." *Utley v. Tenn. Dep't of Corr.*, 118 S.W.3d 705, 712 (Tenn.Ct.App. 2003). However, review of the trial court's legal conclusions is *de novo* without any presumption of correctness. *Willis*, 113 S.W.3d at 710.

The Tennessee Trade Practices Act, Tenn.Code Ann. § 47–25–101 to –115, prohibits anti-competitive conduct affecting the price of products to producers and consumers. The Act provides:

> All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

Tenn.Code Ann. § 47–25–101 (2005). Additionally, the TTPA provides a private right of action to aggrieved consumers against those who violate its provisions.

> Any person who may be injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent juris-

diction, from any person operating such trust or combination, the full consideration or sum paid by the person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust.

Tenn.Code Ann. § 47–25–106 (2005).

The Complaint charges that defendants entered into an "arrangement" or "combination" in which they required retail merchants who accepted their credit cards to also accept their debit cards. This "tying arrangement" increased the cost to merchants of the Defendants' payment card processing services which in turn tended to advance the price of "products" or "articles" sold by those merchants to consumers in Tennessee. Plaintiffs do not allege that the defendants' conduct directly affected Tennessee's market for tangible goods. Rather, the plaintiffs allege that the defendants' conduct directly affected the market for payment card processing services which incidentally affected the market for tangible goods.

The Chancery Court, in dismissing Plaintiffs' claims under the TTPA, reasoned that the defendants' alleged conduct did not involve a "product or article" within the intent of the TTPA. The Court's other reason was that the TTPA was inapplicable because the plaintiffs did not allege sufficient facts to show the defendants "controlled" the "sale" of "goods, wares, merchandise, or articles" as required by the TTPA.

█ The law is well settled that the TTPA applies only to tangible goods, not intangible services. This principle was established by the Tennessee Supreme Court in *McAdoo Contractors, Inc. v. Harris*, 222 Tenn. 623, 439 S.W.2d 594 (1969). In *McAdoo*, Carroll County invited bids for the construction of a warehouse to be leased to Henry I. Siegel Company, Inc. Although McAdoo Contractors, Inc., submitted the lowest bid, the contract was awarded to another contractor upon the advice of the future lessee. McAdoo Contractors, Inc., filed suit against the county's architect, the county judge, Henry I. Siegel Company, Inc., and Forcum–Lannom, Inc., alleging that they "entered into a combination in restraint of trade contrary to T.C.A. § 69–101," now codified at § 47–25–101.

In *McAdoo*, the trial court dismissed the claim, and on appeal to the Tennessee Supreme Court, the Court said:

> We think it clear upon reading T.C.A. § 69–101 that it has no application under the facts and circumstances of this case. The statute in express terms applies to *articles* of foreign and domestic origin, so that it would be virtually impossible to bring under the statute a case involving only the award of a building construction contract. It would seem the statute would in such case apply only to an unlawful effort to control the price of the building material, and not to the award of the contract where control of cost of articles was not a factor.

> On the basis of the well pleaded facts, the sole reason McAdoo did not get the contract, was not because of arrangements or agreements with respect to competition in articles of foreign or domestic origin, but because Carroll County had reserved to itself the right to award it to any bidder it might choose. And acting under this reservation, the contract was awarded by Carroll County to Forcum–Lannom, which its responsible advisers thought to be more experienced.

> Before this statute could apply, it would be necessary to find and hold that this kind of contract provision has been outlawed by this Code section. But this is so obviously not the case that even

complainant does not make this contention.

*Id.* at 597–98.

The *McAdoo* Court distinguished between a contract for tangible goods, where the TTPA would apply, and a contract for intangible services, to which the TTPA would not apply. Since that case, our courts have consistently followed this distinction and held that the TTPA only prohibits "arrangements" or "combinations" which involve products, not those that involve services. *Beaudreau v. Larry Hill Pontiac/Oldsmobile/GMC, Inc.*, 160 S.W.3d 874, 881–82 (Tenn.Ct.App.2004); *Jo Ann Forman, Inc. v. Nat'l Council on Comp. Ins., Inc.*, 13 S.W.3d 365, 373 (Tenn.Ct. App.1999).[1] The plaintiffs cite various

cases for the proposition that the TTPA does apply to services, but these cases are not controlling.[2]

■ Defendants' conduct involved payment card processing services, not products. Plaintiffs attempt to avoid this by asserting that defendants' conduct not only involved payment card processing services, but also indirectly affected product prices and thus, implicated the TTPA. Essentially, plaintiffs attempt to avoid *McAdoo, Forman,* and *Beaudreau* and use an incidental effect upon products as a backdoor to state a cause of action. "It is a well settled principle of law that one cannot do indirectly what cannot be done directly." *Haynes v. City of Pigeon Forge,* 883 S.W.2d 619, 622 (Tenn.Ct.App.1994).

---

**1.** In *Forman,* the Court also noted that, after the *McAdoo* decision, the General Assembly made numerous unsuccessful attempts to amend the TTPA in order to expand its scope, including one bill which would have expressly added "services" to § 47–25–101. *Jo Ann Forman, Inc.* 13 S.W.3d at 372–73. The Court deemed the failure of these proposals to be persuasive evidence that the General Assembly adopted the *McAdoo* construction of § 47–25–101. *Id.* at 373.

**2.** Two of the Plaintiffs' cases pre-date *McAdoo* and do not discuss the application of the TTPA to services. *Greene County Tire & Supply, Inc. v. Spurlin,* 207 Tenn. 189, 338 S.W.2d 597 (1960) (upholding a non-competitive agreement incident to the sale of a business without addressing the defense that the agreement violated the TTPA); *Kerrigan Iron Works, Inc. v. Cook Truck Lines, Inc.,* 296 S.W.2d 379, 383 (Tenn.Ct.App.1956) (affirming issuance of an injunction requiring the defendants to provide their customary services to the plaintiff without discussing the plaintiff's claim under the TTPA).

Four of the Plaintiffs' more recent cases did not address whether the TTPA applies to services because the restraint at issue involved tangible goods or the TTPA claim was dismissed on other grounds. *Piccadilly Square v. Int'l Constr. Co.,* 782 S.W.2d 178, 184 (Tenn.Ct.App.1989) (holding that the defen-

dant's assertion that a construction contract violated the TTPA was "without merit" because there was nothing in the contract or the record supporting such a claim); *Dzik & Dzik, P.C. v. Vision Serv. Plan,* No. 836, 1989 WL 3082 (Tenn.Ct.App. Jan.20, 1989) (the alleged restraint of trade involved the market for finished eyeglasses and frames); *Bob McEachern Photographers, Inc. v. Hap Minhinnett Photography, Inc.,* 1986 WL 9312 (Tenn.Ct.App. Aug.29, 1986) (finding that a services contract was not a restraint of trade because it did not interfere with the public interest); *Lynch Display Corp. v. Nat'l Souvenir Ctr., Inc.,* 640 S.W.2d 837 (Tenn.Ct.App.1982) (the alleged restraint of trade involved wax figures leased to museums).

The Plaintiffs also cited a federal decision, *Bloom v. General Elec. Supply Co.,* 702 F.Supp. 1364 (M.D.Tenn.1988), for the proposition that the TTPA applies to employment services. The *Bloom* Court held that the TTPA's policy discouraging restraint on trade applied to competition involving both articles and employment services. *Id.* at 1368. This conclusion, however, was rejected by the United States Court of Appeals for the Sixth Circuit. *Halvorsen v. Plato Learning, Inc.,* No. 05–5325, 167 Fed.Appx. 524, 2006 WL 348163, at *5 (6th Cir. Feb.15, 2006) ("No other Tennessee decision supports this reading of the statute, and no federal or state case has cited *Bloom* favorably for this proposition.").

Businesses that manufacture or distribute tangible goods must pay for various business services. The cost of these services, like all production costs, influence the price at which such businesses sell their products. The TTPA cannot be asserted every time product prices are influenced by anti-competitive conduct in the service industries without effectively expanding the TTPA's scope to include those service industries. Such an implicit expansion of the TTPA's scope would be in direct contravention of the Tennessee Supreme Court's interpretation of § 47–25–101 as expressed in *McAdoo*. We affirm the decision of the Chancery Court on this issue.[3]

■ The Tennessee Consumer Protection Act, Tenn.Code Ann. §§ 47–18–101 to –126, prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn.Code Ann. § 47–18–104(a) (2005). The TCPA also creates a private right of action:

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn.Code Ann. § 47–18–109(a)(1) (2005). We are required to liberally construe the TCPA to promote certain expressed policies, which include the protection of "consumers and legitimate business enterprises from those who engage in unfair or decep-tive acts or practices in the conduct of any trade or commerce in part or wholly within this state" and "the development of fair consumer practices." Tenn.Code Ann. § 47–18–102 (2005). The General Assembly directed that the TCPA "be interpreted and construed consistently with the interpretations given by the federal trade commission and the federal courts pursuant to § 5(A)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1))." Tenn.Code Ann. § 47–18–115 (2005).[4]

■ The Complaint asserts that the defendants' "tying arrangement" constitutes an unfair or deceptive act or practice affecting the conduct of trade or commerce in Tennessee. Further, that this arrangement inflated the price of consumer goods, causing the plaintiffs to suffer ascertainable losses. The Trial Court concluded that "unfair or deceptive acts or practices" do not include anti-competitive conduct in dismissing the plaintiffs' TCPA claim. The plaintiffs argue the Trial Court's interpretation of "unfair or deceptive acts or practices" is too narrow, and the insists the phrase includes anti-competitive conduct.

The Plaintiffs rely on *Blake v. Abbott Labs., Inc.*, No. 03A01–9509–CV–00307, 1996 WL 134947 (Tenn.Ct.App. Mar.27, 1996), for the proposition that the TCPA does apply to anti-competitive conduct. This reliance on *Blake* is misplaced. In *Blake*, the plaintiff alleged that the defendants conspired to fix the price of baby formula. Based on this conduct, the plaintiff asserted claims under both the TTPA

---

**3.** The Plaintiffs' alternative argument that the credit cards and debit cards issued by the Defendants are "products" allowing application of the TTPA to the Defendants' conduct is not persuasive. These cards serve no function other than to identify their holders as individuals entitled to use the Defendants' services. Cardholders do not pay the Defendants in order to obtain the cards; they pay the Defen-dants in order to use their payment processing services.

**4.** 15 U.S.C.A. § 45(a)(1) provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

and the TCPA. After concluding that the plaintiff's TTPA claim was valid, the Court addressed the TCPA claim and "whether price fixing is an unfair or deceptive act or practice." The Court noted the common and ordinary meaning of "unfair" as defined by two dictionaries and the statement in § 47–18–102 that the TCPA shall be liberally construed. The *Blake* Court did not investigate the federal courts' interpretation of "unfair or deceptive acts or practices" as required by § 47–18–115. Based upon this analysis, the Court concluded that price fixing is an "unfair" practice forming the basis of a TCPA claim and that application of the TCPA is not inconsistent with application of the TTPA. The Court also noted, however, that if the defendants' conduct was later determined to fall outside the scope of the TTPA,[5] both the TTPA and TCPA claims would fail because "[i]t is a well-settled principle of law that one cannot do indirectly what cannot be done directly." *Id.* at *7.

■ Thus, the *Blake* Court held that anti-competitive conduct which forms the basis for a TTPA claim necessarily forms a valid basis for a TCPA claim. Anti-competitive conduct which falls outside the scope of the TTPA cannot be used to form the basis for a TCPA claim. Rather than supporting plaintiff's argument, *Blake* would bar the plaintiffs' TCPA claim because plaintiffs allegations of anti-competitive conduct failed to form the basis of a valid TTPA claim.

The dismissal of plaintiffs' TCPA claim is further supported by *Sherwood v. Microsoft Corp.*, No. M2000–01850–COA–R9–CV, 2003 WL 21780975 (Tenn.Ct.App. July 31, 2003), which rejected *Blake's* first proposition without considering the second. The *Sherwood* Court held that "claims based upon anticompetitive conduct are not cognizable under the TCPA." *Id.* at *33.

Based upon its reading of 15 U.S.C. § 45(a)(1), the *Sherwood* court stated:

> The federal provision referred to, unlike the TCPA, declares two types of offenses unlawful: (1) unfair methods of competition in or affecting commerce; and (2) unfair or deceptive acts or practices in or affecting commerce. While the Tennessee General Assembly has chosen to include in the TCPA's prohibitions "unfair or deceptive acts or practices affecting the conduct of any trade or commerce," Tenn.Code Ann. § 47–18–104(a), it did not include unfair competition or anticompetitive acts. That choice is significant.

*Sherwood,* at *31.

The choice was significant because federal courts "interpreted the 'unfair methods of competition' language as applying to violations of the Sherman Act and other antitrust statutes and to actions raising antitrust issues or concerns." *Id.* at *31 n. 35. "Apparently in reaction to judicial interpretation requiring a showing of injury to competition, not just to consumers, . . . the Act was amended in 1938 to add to the FTC's enforcement jurisdiction 'unfair or deceptive acts or practices.'" *Id.* at 31. Finally, the *Sherwood* Court stated, "We cannot presume other than that the Tennessee General Assembly knowingly chose not to include antitrust or anticompetitive conduct as actionable under the TCPA." *Id.* at *32.

---

5. Specifically, the *Blake* court was concerned that there might be a later determination that the defendants' conduct predominately affected interstate commerce rather than intrastate commerce. *Blake,* 1996 WL 134947, at *5. The court believed this would place the defen-

dants' conduct outside the scope of the TTPA. *Id.* at *4–5. *Blake* was decided before the Tennessee Supreme Court adopted the "substantial effects standard" in *Freeman Indus. v. Eastman Chem. Co.,* 172 S.W.3d 512, 523 (Tenn.2005).

The *Sherwood* decision has impacted on courts in other jurisdictions. *See, In re Relafen Antitrust Litigation,* 221 F.R.D. 260, 284 (D.Mass.2004) (applying Tennessee law) (following *Sherwood*); *Johnson v. Microsoft Corp.,* 155 Ohio App.3d 626, 802 N.E.2d 712, 720–21 (2003) (following *Sherwood's* reasoning).

■ Finally, on this issue, plaintiffs argue the defendants' anti-competitive conduct falls within the definition of "unfair" as expressed in *Tucker v. Sierra Builders,* 180 S.W.3d 109, 116–17 (Tenn.Ct.App. 2005). The *Tucker* court stated that "an act or practice should not be deemed unfair 'unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'" *Tucker,* at 116–17 (quoting 15 U.S.C.A. § 45(n)). However, *Tucker* did not involve allegations of anti-competitive conduct.[6] Moreover, the *Tucker* Court stated, "While many states' little FTC acts prohibited both unfair methods of competition and unfair or deceptive acts or practices, the statutes of other states, including Tennessee's, prohibit only the second category of conduct-unfair or deceptive acts or practices." *Id.* at 114 n. 6 (citing *Sherwood,* 2003 WL 21780975, at *32). The foregoing demonstrates that the TCPA does not apply to anti-competitive conduct. We affirm the Chancery Court on this issue.

■ Next defendants argue that the Trial Court erred in not dismissing plaintiffs' claim for unjust enrichment and money had and received.

■ Both unjust enrichment and money had and received are essentially the same cause of action, being both quasi-contractual actions.[7] The Tennessee Supreme Court recently discussed the elements of an unjust enrichment claim as follows:

The elements of an unjust enrichment claim are: 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust. The plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract.

A plaintiff need not be in privity with a defendant to recover under a claim of unjust enrichment.... [A] plaintiff need not establish that the defendant received

---

**6.** In *Tucker,* the plaintiff asserted that the defendant's practice of selling its products exclusively through distributors was unfair and that the defendant deceptively misled the plaintiff regarding the quality of the distributor's services. *Tucker,* 180 S.W.3d at 117–19. The plaintiff never asserted a TTPA claim. *Id.* at 113–14.

**7.** "Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." *Whitehaven Community Baptist Church v. Holloway,* 973 S.W.2d 592, 596 (Tenn.1998). "An action for money had and received is based

upon an implied assumpsit." *Steelman v. Ford Motor Credit Co.,* 911 S.W.2d 720, 724 (Tenn. Ct.App.1995).

Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto.

*Paschall's, Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150, 154 (1966).

a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives any benefit from the plaintiff if the defendant's retention of the benefit would be unjust.

*Freeman Indus. v. Eastman Chem. Co.,* 172 S.W.3d 512, 525 (Tenn.2005) (citations omitted) (quoting *Paschall's, Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150, 155 (1966)). "[T]o maintain an action for unjust enrichment, a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile." *Id.* at 526.

The Chancery Court found that plaintiffs' Complaint sufficiently alleged that (1) the plaintiffs conferred a benefit upon the defendants, (2) the defendants appreciated this benefit, and (3) allowing the defendants to retain this benefit would be inequitable. Regarding the "exhaustion of remedies" element, the Chancery Court held that the plaintiffs had not yet exhausted their remedies, but that they did not have to do so at that point in the proceedings, and the Chancery Court held that while the "exhaustion of remedies" element was a prerequisite to recovery it was not a prerequisite to proceeding against a third party defendant.

Defendants counter that plaintiffs cannot allege that the defendants retained any unjust enrichment or money had and received, because the defendants are "paying to a nationwide class of merchants—including the Tennessee merchants that accepted MasterCard or Visa—more than $3 billion to settle claims alleging overcharges from the same 'tying' asserted in this case." They further argue that the "exhaustion of remedies" element must be satisfied prior to proceeding against a third party defendant.

"The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust." *Paschall's,* at 155. If a third-party defendant "has given any consideration to any person" for the benefits received from the plaintiff, there is no injustice in allowing the defendant to retain those benefits without paying the plaintiff. *Id.* This principle is commonly applied to unjust enrichment claims based upon improvements to real estate. *See e.g., Venture Const. Co. v. Apple Music City, Inc.,* 847 S.W.2d 509, 511 (Tenn.Ct.App.1992); *D.T. McCall & Sons v. Seagraves,* 796 S.W.2d 457, 464 (Tenn.Ct.App.1990); *John J. Heirigs Const. Co. v. Exide,* 709 S.W.2d 604, 607 (Tenn.Ct.App.1986).

Plaintiffs' Complaint alleges the defendants' "tying arrangement" forced Tennessee merchants to pay an artificially inflated price for defendants' services and that these inflated costs were passed on to consumers in the form of higher product prices. Plaintiffs charge that the defendants indirectly received benefits from plaintiffs and that retention of those benefits by the defendants would be unjust. The Complaint also states, however, that a nation-wide class of merchants filed suit against the defendants in federal court alleging violation of federal anti-trust law, and that defendants have entered into two settlement agreements with these merchants and that, pursuant to these settlement agreements, the defendants will pay $3.05 billion into two settlement funds from which merchants' claims for damages will be satisfied.[8] Thus, the Complaint

---

8. The Federal District Court for the Eastern District of New York approved these settlement agreements in 2003, and all appeals of this ruling have been exhausted. *In re Visa Check/Mastermoney Antitrust Litigation,* 297 F.Supp.2d 503 (E.D.N.Y.2003), *aff'd sub nom., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d 96 (2d Cir.2005), *cert. denied sub nom., Leonard's Pizza by the Slice, Inc. v.*

establishes that the defendants are not unjustly enriched or retain monies had and received because the Complaint acknowledges that defendants have paid consideration to the merchants for any benefits received indirectly from the plaintiffs. Accordingly, we reverse the Chancellor on the issue of plaintiffs' claims for unjust enrichment and money had and received.

We pretermit the issue of whether plaintiff satisfied the "exhaustion of the remedies" requirement, because, based on the pleadings the plaintiffs cannot establish that defendants were unjustly enriched or retained any money had and received.

The Court has considered the remaining issues and find them to either be moot or without merit. The Judgment of the Chancery Court is affirmed in part, reversed in part, and the plaintiffs' action upon remand will be dismissed. The costs of the appeal are assessed to plaintiffs Roger Bennett and Richard Allen Combs.