IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 2, 2008 Session

# POWER EQUIPMENT COMPANY v. EUGENE ENGLAND, CLAIBORNE BUILDERS AND DEVELOPER, INC., and WILDER CONSTRUCTION COMPANY, INC., d/b/a LIFETIME HOMES

Direct Appeal from the Chancery Court for Claiborne County
No.  15,713      Hon. Billy Joe White, Chancellor

No. E2008-00919-COA-R3-CV  - FILED FEBRUARY 26, 2009

Plaintiff brought this action against defendant Claiborne Builders to recover the rental fees from a contract between plaintiff and Claiborne Builders for earth-moving equipment which Claiborne Builders used to remove soil from Wilder's property.  The Trial Judge entered Judgment against Claiborne Builders on its contract and Wilder Construction under an implied contract.  Wilder has appealed.  We reverse the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Rose Ellison, Tazewell, Tennessee, for appellant, Wilder Construction Co., Inc.

James D. Estep, III, Tazewell, Tennessee, for appellee, Power Equipment Co.

## OPINION

This is an appeal from a Judgment entered by the Trial Court in favor of plaintiff/appellee Power Equipment Company against defendant/appellant Wilder Construction Company, Inc. ("Wilder") and defendants Eugene England and Claiborne Builders and Developers,

Inc. (collectively "England") for the amount of $50,269.77. [1]

Plaintiff's complaint alleged that Eugene England, doing business as Claiborne Builders and Developers, Inc., and Claiborne Builders and Developers, Inc., entered into an agreement of sale and lease with plaintiff regarding certain construction equipment and machinery and that the subject equipment was "installed" upon real property owned by Wilder. The total amount due as a result of the sale or lease of the equipment was $41,355.53, and the complaint alleged that plaintiff was entitled to the issuance of an attachment for the property and for Lien Lis Pendens during the pendency of the proceeding.

The complaint alleged that England and Wilder are liable for the amount of the indebtedness, and that a judgment against defendants should be entered, plus interest, finance charges, attorneys fees, court costs and expenses. The complaint averred that England was liable for attorney's fees, expense of collection and costs pursuant to contract, and plaintiff asked that the real property of Wilder be sold and the indebtedness to plaintiff and to prior lien holders be paid in full. An attachment bond and writ of attachment for the real property owned by Wilder accompanied the complaint. Wilder answered and denied liability.

The case was tried before the Trial Judge, who entered a Joint and Several Judgment in the amount of $50,269.77 for plaintiffs against defendants. The Judgment included attorney's fees and the cost of recording the lien, and reflects that Power Equipment "shall continue to have a lien against the real property described in Exhibit A of the Complaint and this Judgment may operate as evidence of lien for recording purposes . . . ."

The Trial Court found that the case involved a "con man" who was not a witness or a party to the matter. This "con man"[2] had apparently made false statements and had actually created the situation. Mr. England was liable to the plaintiff individually and as a corporation pursuant to contract and the personal guarantee he had signed. The Judgment stated that although there was no written contract between plaintiff and Wilder, Wilder was still jointly and severally liable with England to plaintiff. The Court said the basis for Wilder's liability was that Wilder, as owner of the land where the equipment was used, knew or should have known that the equipment was in use on its property and should have known that a lien would attach to the land. The Court stated "[c]ommon sense would tell you if you look out there and saw five or six bulldozers, excavators, compactors, and things of this size and nature, there's a major construction job going on. I think the Wilders knew this was going on."

The Court also stated that "[t]here may not have been any written contracts. . . . But . . . Mr. England said at one point . . . I [England] asked Mr. Wilder to let me take over the contract of Burris to - - apparently to complete, to finish this excavation of leveling and the sale. . ." Then,

---

[1]Eugene England is the sole owner of Claiborne Builders and Developers, Inc.

[2] The referenced con man was Donnie Burris.

-2-

the Trial Court expressed some concern about whether Wilder could be liable for attorney's fees absent a written contract between it and plaintiff and requested further briefing on the issue. The Court described his determination of liability against Wilder as an "implied contract" as follows:

> Now, I've not thought about and counsel have not directed, I think that's something we might ought to all think about and maybe do it by motion is whether or not under an implied contract, a quantum meruit type situation that I've found against the Wilders, would they be obligated on attorney fees and so forth?

Following a subsequent hearing, the Trial Court determined that all defendants were liable for attorneys fees, pre-judgment interest and interest and that plaintiff was entitled to a lien against the real property owned by Wilder. Only Wilder has appealed.

The issues presented are:

1.    Did the Trial Court err when it allowed plaintiff to recover under the Tennessee Mechanics and Materialmens statutes, Tenn. Code Ann. § 66-11-01 *et seq*.?

2.    Did the Trial Court err when it found an implied contract in law between plaintiff and defendant Wilder Construction Company, Inc.?

3.    Did the Trial Court err in finding defendant Wilder Construction Company, Inc. jointly and severally liable with Eugene England to plaintiff?

4.    Did the Trial Court err in finding defendant Wilder Construction Company, Inc. jointly and severally liable with Eugene England to plaintiff for attorney fees, interest and certain costs?

A trial court's findings of fact in a non-jury trial are reviewed *de novo* upon the record, and the trial court is afforded a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995). The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005)

The first issue on appeal is whether the Trial Court erred in not requiring Power Equipment to strictly comply with the Tennessee Mechanics and Materialmens statute, Tenn. Code Ann. § 66-11-01 *et seq.* There is no mention of this statute in the trial court record. The statute is not referred to in the complaint or the attachment bond. Assuming, for purposes of the appeal that the lien at issue in this case arose pursuant to the Mechanics and Materialmens statute, this issue was never raised in the Trial Court, either in pleadings or at the trial, and may not be raised for the first time on appeal. *Simpson v. Frontier Cmty. Credit Union,* 810 S.W.2d 147, 151 (Tenn.1991). We hold that the Trial Court's Judgment is not based on Tenn. Code Ann. § 66-11-01 *et seq.*

It is well established that a contract can be express, implied, written, or oral. *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.,* 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002).

It is undisputed that neither the Wilders individually nor Wilder Construction Company had written or oral contracts regarding the Wilder property and the excavation of dirt with C & C Construction,[3] Eugene England, Claiborne Builders and Developers, Inc., Donny Burris or Power Equipment.

There was no contract, either written or oral, between Power Equipment and Wilder regarding the lease of the earthmoving equipment. The Trial Court found Wilder liable to Power Equipment, finding an implied contract or "a quantum meruit type situation".

Tennessee recognizes "two distinct types of implied contracts; namely, contracts implied in fact and contracts implied in law . . . ." *Angus v. City of Jackson,* 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997)(quoting *Paschall's, Inc. v. Dozier,* 219 Tenn. 45, 53-54, 407 S.W.2d 150, 154 (1966)). The Trial Court indicated that it found a "quantum meruit situation", and this establishes that the implied contract referenced by the Court was a contract implied in law as the Tennessee Supreme Court has recognized that contracts implied in law are also discussed in terms of unjust enrichment, quasi contract, and quantum meruit and that actions brought under those theories are essentially the same. *River Park Hosp., Inc. v. BlueCross BlueShield of Tennessee, Inc.* 173 S.W.3d 43, 58 (Tenn. Ct. App. 2002)(citing *Paschall's*; *Whitehaven Cmty. Baptist Church v. Holloway,* 973 S.W.2d 592, 596 (Tenn. 1998)).

The *Paschall's, Inc.* case is instructive on the issue of whether the Trial Court's finding of a contract implied in law was correct. The Supreme Court in *Paschall* stated that "to hold that, in absence of a mechanic's lien, privity of contract is a prerequisite in all actions to recover the value of labor and material furnished, would not only open the door to fraud, but would completely abrogate the common law remedy of quantum meruit." The Court stated that as a general rule other than the statutory right to a mechanic's lien subcontractors and materialmen have no right to a personal judgment against the owner where there is no contractual relation between them. However, a cause of action under the theory of unjust enrichment can be sustained under certain factual scenarios. *Id.* at 153. The Court explained that the law recognizes two distinct types of implied contracts. The distinction between the two types of implied contracts is that contracts implied in fact arise under circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intent to contract. Contracts implied in law are imposed or created by law without the consent of the party found to be bound on the basis that they are "dictated by reason and justice." *Id.* at 154. The Court noted that claims based on the theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same and that the courts frequently employ the various terminology interchangeably to describe that class of implied obligations "where, on the basis of justice and equity, the law will impose a contractual

_____

[3]There was a contract of lease between Wilder and C & C for the office building located on the Wilder property.

relationship between parties, regardless of their assent thereto." The *Paschall* Court observed that the general rule is that an implied contract in law will not arise against one who benefitted by the work performed if the work was done under a special contract with another. The Court remarked that "[i]n such a case it could hardly be said that the retention of the benefit by the third party is unjust as to the person who provided the work." But if, for whatever reason, the express contract becomes unenforceable or invalid there is no reason to preclude the furnisher of the work from seeking recovery against the third person who benefitted from the work on the theory of quantum meruit. *Id.* at 154 - 155. *Also see, Bennett v. Visa U.S.A. Inc.* 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006)(holding that plaintiff must demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract).

In this case, the evidence was conflicting and unsubstantiated as to whether the work performed on Wilder's land using Power Equipment's machinery benefitted Wilder, and based upon the Supreme Court's holding in *Paschall* and our holding in *Bennett,* we do not have to decide if a benefit was received by Wilder. It is undisputed that England and Power Equipment had an express, written contract for the lease of the machinery and England owed Power Equipment a balance of $48,402.77 for the use of equipment pursuant to the contract and his personal guarantee. Thus, Power Equipment was required to pursue its remedy against England with whom it had privity of contract before it could pursue an alleged remedy against Wilder under a contract implied in law theory.

We hold the Trial Court erred in holding there was an implied contract between Power Equipment and Wilder and that pursuant to the contract, Wilder was liable with England for the balance on the account. We reverse the Judgment against Wilder and remand to the Trial Court for a dissolution of the lien against the Wilder property.

As Wilder is not liable to Power Equipment the issues regarding attorneys fees and joint and several liability are moot.

We reverse the Judgment of the Trial Court and remand for further proceedings consistent with this opinion. The cost of the appeal is assessed to Power Equipment Company.

_____
HERSCHEL PICKENS FRANKS, P.J.