McAdoo Contractors, Inc., Appellant,

*v.*

William C. Harris, Jr., et al., Appellees.

439 S.W.2d 594.

(*Jackson,* April Term, 1968.)

Opinion filed March 26, 1969.

ELAM & GLASGOW, Union City, for appellant.

RUSSELL RICE, SR., Jackson, MADDOX, LASSITER & JONES, Huntingdon, and ASHLEY, MALONE, ASHLEY & LAWSON, Dyersburg, for appellees.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

McAdoo Contractors, Inc., a general construction contractor, sued William C. Harris, Jr., individually and as architect for Carroll County, G. W. Bullock, individually and as County Judge of Carroll County, Sam C. Siegel, individually and as Vice-President of Henry I. Siegel Co., Inc., and Henry I. Siegel Co., Inc., a New York Corporation domesticated under the laws of Tennessee, and Forcum-Lannom, Inc., a Tennessee corporation, for ordinary, special and punitive damages in the total amount of $202,500.00 alleging they fraudulently conspired to deprive complainant of a contract to construct a warehouse for Carroll County, to be leased to Henry I. Siegel Company, Inc., at Bruceton; and entered into a combination in restraint of trade contrary to T.C.A. sec. 69-101, to prevent complainant from getting the construction contract. The bill was dismissed on demurrers, and on Judge Bullock's plea in abatement that he could not be sued as County Judge of Carroll County in Madison County; complainant has appealed assigning two errors as follows:

"1. The Chancellor erred in sustaining the plea in abatement and dismissing the bill as to the defendant, G. W. Bullock, in his official capacity of County Judge.

This was erroneous for the reason that the suit is not against Carroll County and does not seek any relief against the County. The bill alleges that the defendant, Bullock, while serving as County Judge, used his official position to wrongfully injure the complainant, resulting in great damages to it. As an agent of the County, he is suable in the same manner and for the same reasons as an individual would be suable where an agency exists.

2. The Chancellor erred in sustaining the demurrers and dismissing the complainants bill, as amended.

The bill is maintainable because the Chancery Court has jurisdiction of the subject matter. It states facts which constitute fraud or enough badges of fraud for the Court to presume fraud. It also charges facts showing a combination or conspiracy in restraint of trade and to lessen competition within the meaning of our statutes and case law.''

While we agree Madison County Chancery Court could have jurisdiction of a suit against Bullock for his personal malfeasance, and so the first assignment standing alone would be good, we are constrained to the conclusion, even bearing in mind the preference the law has for the bill over the demurrer, that the second assignment is not good, and that the original bill was properly dismissed on the ground it failed to state a case against defendants.

The essential, unadorned facts are as follows: In November 1965, on proper authorization, Carroll County Tennessee, sold three million dollars of industrial revenue bonds to finance the building of a warehouse to be leased to defendant Henry I. Siegel Company, Inc.

Carroll County then invited bids for the construction, the invitation being in the usual form and containing this stipulation:

''The County reserves the right to reject any or all bids, to waive informalities in bidding, to accept the bid that is lowest and to its best interest in the opinion of the elected officials authorized to act in its behalf.''

McAdoo, at considerable expense, submitted the low bid of $1,675,000.00. Defendant, Forcum-Lannom, Inc., was the next low bidder at $1,697,000.77.

Later, Harris, Bullock and Siegel met with the three low bidders and Harris had them furnish lists of their subcontractors and supervisors who would work on the building.

The defendants met in Bruceton, Tennessee to discuss the award of the contract, and agreed to recommend that it be awarded to defendant, Forcum-Lannom, Inc.

A day or two later, Harris told the president of complainant company that he had made an investigation and that McAdoo would not get the contract, as he and the other defendants had decided in favor of Forcum-Lannom, Inc.

McAdoo alleges it thought it would get the contract on its low bid and that when advised defendants would recommend another contractor, "it was most humiliating and embarrassing to the complainant and severely damaged its reputation as a contractor with both its subcontractors and the public, and in the future, it will affect the ability of complainant to get subcontractors to bid on jobs; all of which is vital to complainant's business."

On April 11, 1966, the Quarterly County Court of Carroll County voted to let the contract to Forcum-Lannom. It was announced by a representative of Henry I. Siebel Co., Inc., that it recommended that the Court award the contract to Forcum-Lannom. And defendant, Sam C. Siegel, stated in substance that he had made an investigation of McAdoo and found there was nothing wrong with other jobs done by it; that its officers and

employees had excellent reputations; and that it had excellent financing; but that McAdoo had not built a warehouse of the size of the one to be built, and for that reason only, he recommended the bid be awarded Forcum-Lannom. After this discussion, the Court awarded the contract to Forcum-Lannom.

On these facts, the bill makes certain charges which it is necessary for us to consider in determining whether a case has been stated against defendants.

In support of the first basis of the original bill, fraud, McAdoo charges that all of the defendants except Forcum-Lannom were in a confidential relationship with it after its bid was submitted, and that this relationship required these defendants to disclose to it all of the facts concerning the contract and their decisions in regard thereto. And that their failure so to do was a breach of duty owed McAdoo and was fraudulent in fact and law.

■ McAdoo cites no authority for the proposition it had this confidential relationship. And, we know of no authority it could cite to this effect. As architect and County Judge for Carroll County, Harris' and Bullock's first duty was to it. While this primary duty would not excuse a deception injurious to McAdoo, the bill does not charge any deception of any kind. For a comprehensive delineation of the circumstances under which a fiduciary relation may arise, see *Roberts v. Chase*, 25 Tenn.App. 636, 166 S.W.2d 641; 3 Pomeroy's Equity Jurisprudence, 5th Ed., secs. 955-957.

While the allegation is made in general terms that defendants failed to disclose all facts affecting their activities, conduct and conversations with respect to the

contract with McAdoo, there is no intimation by way of direct allegation or even by way of innuendo that in point of fact any agreements of any kind were reached between defendants with respect to the contract, except the agreement to recommend to the Carroll County Court that the contract be awarded to Forcum-Lannom. And the bill alleges that this decision was made known to McAdoo immediately after the Bruceton meeting, in ample time for it to take any steps it might think necessary before the County Court meeting and the award of the contract.

In considering the sufficiency of these charges to make a case, it must be noted that at no place in the bill is it even remotely suggested that defendants stood to gain anything other than a building constructed by a more experienced contractor. Likewise, there is no allegation that defendants made any false or deceptive or misleading statements about the matter to the Carroll County Court which had the sole right to award the contract.

Concerning fraud, Gibson has the following to say:

"Sec. 979. *Suits in Cases Resulting from Actual Fraud.* Fraud, in the sense of a Court of Equity, properly includes all acts, omissions and concealments, which involve a breach of legal or equitable duty, or of trust or confidence justly reposed, and which are injurious to another, or by which an undue and unconscientious advantage is taken of another.

"Actual fraud is the intentional doing or saying of something, or the intentional concealment of something, material to a business transaction, by a party thereto, whereby the other party is induced to act or not to act, to his injury, the former party contemplating such a result, or such a result being the reasonable

and natural consequence of his conduct." Gibson's Suits in Chancery, 5th Ed., sec. 979, pp. 212-213.

Another statement concerning the elements of fraud is found in Pomeroy's Equity Jurisprudence, as follows:

"* * * It has been shown in a former chapter, that the jurisdiction of chancery was originally rested upon two fundamental notions, equity and conscience, or good faith. The first of these embraced all cases where a party, acting according to the rules of the law, and not doing anything contrary to conscience or good faith, might obtain an undue advantage over another, which, though strictly legal, equity would not permit him to retain. The second embraced all those cases where a party, although perhaps still keeping within the limits of the strict law, so as to be sustained by the law courts, had committed some unconscientious act or breach of good faith, and had thereby obtained an undue advantage over another, which advantage, even though legal, equity would not suffer him to retain. The relief given by equity in all cases of fraud is plainly referable to this second head of the original jurisdiction. Every fraud, in its most general and fundamental conception, consists in obtaining an undue advantage by means of some act or omission which is unconscientious or a violation of good faith in the broad meaning given to the term by equity—the bona fides of the Roman law." Pomeroy's Equity Jurisprudence, sec. 873, p. 353.

When the bill is tested against these general statements of what constitutes fraud, it is too plain that it does not meet the test. The duty owed, in the premises, was to tell the truth and take no unfair advantage, and

there are no allegations of fact, as distinguished from conclusions, making such a case. While the bill rather clearly evidences employment of every skill at the command of a resourceful lawyer, still, no case of fraud is stated; and this must be attributed to the concern of the draftsmen for the truth.

■ We think it clear upon reading T.C.A. sec. 69-101 that it has no application under the facts and circumstances of this case.[1] The statute in express terms applies to *articles* of foreign and domestic origin, so that it would be virtually impossible to bring under the statute a case involving only the award of a building construction contract. It would seem the statute would in such case apply only to an unlawful effort to control the price of the building material, and not to the award of the contract where control of cost of articles was not a factor.

On the basis of the well pleaded facts, the sole reason McAdoo did not get the contract, was not because of arrangements or agreements with respect to competition in articles of foreign or domestic origin, but because Carroll County had reserved to itself the right to award it to any bidder it might choose. And acting under this reservation, the contract was awarded by Carroll County to Forcum-Lannom, which its responsible advisers thought to be more experienced.

---

[1] *"T.C.A. sec. 69-101. Trusts and combinations lessening competition or controlling prices unlawful and void.*—All arrangements contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any product or article, are declared to be against public policy, unlawful, and void."

Before this statute could apply, it would be necessary to find and hold that this kind of contract provision has been outlawed by this Code section. But this is so obviously not the case that even complainant does not make this contention.

The nonapplication of the statute is further made manifest by the fact that Carroll County is not before the Court. The statute condemns agreements *"between"* actors for purposes contrary to it. The only agreement was between Carroll County and Forcum-Lannom, and the bill is devoid of any allegations of misconduct against either of these.

We think the Chancellor reached the right conclusion and affirm his decree.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.