IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 15, 2006 Session

## JERRY DUKE, d/b/a MOSCOW MANOR APARTMENTS v. BROWNING-FERRIS INDUSTRIES OF TENNESSEE, INC., ET AL.

**A Direct Appeal from the Circuit Court for Fayette County**
**No. 3742    The Honorable Jon Kerry Blackwood, Judge**

_____

**No. W2005-00146-COA-R3-CV - Filed May 31, 2006**

_____

Plaintiff/Appellant filed suit against Defendants/Appellees claiming that Defendants/ Appellees had violated the Tennessee Trade Practices Act, the Tennessee Consumer Protection Act, and the common law doctrines of good faith and fair dealing, and unjust enrichment in its contracting for commercial waste hauling services in the Memphis area. The trial court granted summary judgment in favor of Defendants/Appellees on both the statutory violation claims and the common law claims. We affirm.


**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Gordon Ball of Knoxville, Tennessee and William E. Phillips II of Knoxville, Tennessee for Appellant, Jerry Duke

R. Dale Grimes, David R. Esquivel and J. Brandon Miller of Nashville, Tennessee; Michael F. Rafferty of Memphis, Tennessee; Michael W. Whitaker of Covington, Tennessee for Appellees, Browning-Ferris Industries of Tennessee, Inc. and Browning-Ferris Industries, Inc.

### OPINION

On July 3, 1996, Jerry Duke, d/b/a Moscow Manor Apartments ("Plaintiff," or "Appellant") filed a "Class Action Complaint" in the Circuit Court for Fayette County, Tennessee. Mr. Duke claimed that, from 1991 to 1996, Browning-Ferris Industries of Tennessee, Inc. and Browning-Ferris Industries, Inc. (together "BFI," "Defendants," or "Appellees") had entered into form contracts with its commercial waste hauling customers in Memphis and that these contracts had prevented competitors from entering the waste hauling market, and had caused the customers to pay more for commercial waste hauling than they otherwise would have. Specifically, Mr. Duke alleged that the

pre-printed forms used by BFI contained certain anti-competitive terms, including a three-year initial term, an automatic three-year renewal term, a requirement that the customer give sixty days notice of non-renewal, and a provision for liquidated damages for early termination of the contract. According to Mr. Duke, these terms made it difficult for customers to switch to BFI's competitors, and resulted in BFI having sixty percent of the commercial waste hauling market in Memphis. According to the Complaint, these allegations amounted to unjust enrichment, monopolization or attempted monopolization of the industry in violation of the Tennessee Trade Practices Act ("TTPA"), T.C.A. § 47-25-101 et seq., the Tennessee Consumer Protection Act ("TCPA"), T.C.A. § 47-18-101 et seq., and the common law duties of good faith and fair dealing.

On August 1, 1996, the trial court conditionally certified a class. However, following BFI's filing of a motion for judgment on the pleadings and to vacate class certification, the trial court, by Order of March 6, 1997, vacated its conditional class certification. Consequently, there is no class certification in this case.

Following the filing of the Complaint, the parties engaged in extensive pre-trial discovery and motions practice. During this time, in 1999, BFI was purchased by Allied Waste Industries, Inc. On July 27, 2001, the trial court held a status conference at which time counsel for BFI noted the challenges presented in defending the case due to this corporate acquisition. Specifically, the purchase of BFI resulted in BFI coming under new management, and in many of BFI's corporate officers and employees leaving the company. The trial court ordered the parties to enter a scheduling order, which was entered on November 1, 2001. On March 20, 2002, Mr. Duke sought leave to amend his Complaint. As discussed above, the initial Complaint contained allegations concerning the existence and competitive effects of BFI's commercial customers' contracts for waste hauling. By amendment, Mr. Duke sought to add an allegation that BFI exercised monopoly power in Memphis-area landfills. Because this case had already been in litigation for approximately six years, and the proposed amendment was "in essence a new cause of action," the trial court denied Mr. Duke's motion to amend the Complaint by Order of August 6, 2002. With the exception of the taking of one deposition by Mr. Duke, the record indicates that there was no activity on this case from August 6, 2002 until September 21, 2004 when BFI moved to dismiss Mr. Duke's claims for failure to prosecute. BFI simultaneously moved for summary judgment. Mr. Duke filed a brief in opposition to BFI's motion on December 1, 2004, and a responsive statement of undisputed material facts on November 20, 2004. Thereafter, BFI prepared and filed a document styled "Defendant BFI's Reply in Support of its Statement of Undisputed Material Facts and Defendant BFI's Response to Plaintiff's Statement of Additional Material Facts." This document includes the original statements of undisputed material fact filed by BFI, Mr. Duke's responses thereto, and BFI's reply.

The trial court heard oral argument on the motions on December 3, 2004. On December 10, 2004, the trial court entered an Order granting BFI's motion for summary judgment. The December 10, 2004 Order contained the following typographical error: "[T]he Court concludes that there are no material facts that are **undisputed**..." (emphasis added). Noting this typographical error, BFI submitted a corrected Order to the trial court. On December 20, 2004, the trial court entered the

corrected Order. On January 14, 2005, Mr. Duke filed a notice of appeal from the December 20, 2004 Order. BFI now contends that the appeal should be dismissed because Mr. Duke did not timely appeal from the December 10, 2004 Order, which BFI asserts is the final order in this case. Before reaching the substantive issues on appeal, we will first address whether Mr. Duke's Notice of Appeal is timely. It is well settled that parties seeking appellate review of a trial court's final decision in a civil proceeding must file a timely notice of appeal. Tenn.R.App.P. 4(a) requires that the notice of appeal be filed with, and received by, the clerk of the appellate court within thirty days after the entry of the judgment appealed from. This requirement is mandatory and jurisdictional in civil cases. *McGaugh v. Galbreath*, 996 S.W.2d 186, 189 (Tenn. Ct. App.1998); *Dewees v. Sweeney*, 947 S.W.2d 861, 863 (Tenn.Ct.App.1996). However, Tenn.R.App.P. 4(b) modifies Tenn.R.App.P. 4(a)'s thirty-day time period when certain post-trial motions are timely filed. Specifically, Tenn.R.App.P. 4(b) provides:

> In a civil action, if a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party: ⋯ (4) under Rule 59.04 to alter or amend the judgment; the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.

In the instant case, BFI presented the trial court with a proposed order, the purpose of which was to alter or amend the December 10, 2004 Order. We perceive that the presentation of the proposed order was tantamount to a motion to alter or amend the judgment, as contemplated by Tenn. R. Civ. P. 59.04. The trial court's adaptation and entry of the proposed order is paramount to its granting the motion to alter or amend. Consequently, under Tenn. R. App. P 4(b), the time for Mr. Duke to appeal ran from the entry of the December 20, 2004 Order, and his notice of appeal was, therefore, timely.

Mr. Duke raises the following additional issues for review as stated in his brief:

> 1. Whether the trial court erred in awarding summary judgment to BFI on Plaintiff's Claim under the Tennessee Trade Practices Act when the summary judgment record established genuine issues of material fact as to whether BFI's conduct lessened or tended to lessen competition in the Memphis area small-containerized waste hauling market.
>
> 2. Whether the trial court erred in awarding summary judgment to BFI on Plaintiff's Tennessee Consumer Protection Act claim when (1) the Act applies to anti-competitive acts, and (2) Plaintiff brought his claim under the Act in a timely manner.
>
> 3. Whether the trial court erred when it awarded summary judgment to BFI on Plaintiff's claim for breach of good faith and fair dealing

when the summary judgment record demonstrates that genuine issues of material fact exist with respect to whether BFI breached its duty of good faith and fair dealing by prohibiting customers from switching to competitors.

4. Whether the trial court erred in awarding summary judgment to BFI on Plaintiff's unjust enrichment claim notwithstanding the fact that the summary judgment record establishes genuine issues of material fact with respect to whether BFI's customer agreements were agreements in restraint of trade.

5. Whether the trial court erred by refusing to consider Plaintiff's complaint allegations and exhibits to Plaintiff's Complaint, including the Competitive Impact Statement, for summary judgment purposes, despite the fact that many of those allegations and statements were undisputed.

It is well settled that a motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On motion for summary judgment, the court must take the strongest legitimate view of evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the nonmoving party that there is no genuine issue of material fact, the nonmoving party must them demonstrate, by affidavits or discovery material, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant or denial of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's denial of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn.1997).

## Statutory violation claims

We will first address the issues concerning whether summary judgment was proper on the TTPA and the TCPA claims.

## TTPA

The TTPA prohibits anti-competitive conduct affecting the price of products to producers and consumers, to wit:

> All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

T.C.A. § 47-25-101 (2005).

In addition, the TTPA provides consumers with a private right of action against those who violate the provisions of the Act, to wit:

> Any person who may be injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent jurisdiction, from any person operating such trust or combination, the full consideration or sum paid by the person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust.

T.C.A. § 47-25-106 (2005).

In *Bennett et al. v. Visa U.S.A., Inc., et al.*, No. E2005-00659-COA-R9-CV, 2006 WL 770467 (Tenn. Ct. App. March 27, 2006), this Court granted an interlocutory appeal to determine whether claims of violation of the TTPA and the TCPA had properly been dismissed pursuant to Tenn. R. Civ. P. 12.02(6). In *Bennett*, the plaintiff/merchants claimed that the defendant/credit card companies had violated the TTPA and the TCPA by requiring merchants who accepted the defendants' credit cards to also accept the defendants' debit cards. Plaintiffs alleged that this "tying arrangement" constituted an attempt to monopolize the debit card market. The *Bennett* Court noted

that "[t]he law is well settled that the TTPA applies only to tangible goods, not intangible services." **Bennett** at *3 (citing **McAdoo Contractors, Inc. v. Harris**, 439 S.W.2d 594 (Tenn. 1969)). In an attempt to implicate the TTPA, the **Bennett** plaintiffs asserted that defendants' conduct not only involved payment card processing services, but also indirectly affected product prices, thus violating the TTPA. The Court found that the "TTPA cannot be asserted every time product prices are influenced by anti-competitive conduct in the service industries without effectively expanding the TTPA's scope to include those service industries." **Id**. at *4.

In the instant case, Mr. Duke first alleges that BFI violated the TTPA by use of its form-contracts for the purchase of waste hauling services. Mr. Duke alleges that BFI customers paid more for BFI's services during the period 1991 to 1996 than would have been paid absent BFI's conduct. From the record before us, we can only conclude that Mr. Duke's claims apply solely to the provision of services, not to the purchase of products or articles. Consequently, the TTPA is not applicable to these service contracts. **See also**, **Beaudreau v. Larry Hill Pontiac/Oldsmobile/GMC**, 160 S.W.3d 187 (Tenn. Ct. App. 2004); **Jo Ann Forman, Inc. v. Nat'l Council on Compensation Ins.**, 13 S.W.3d 365 (Tenn. Ct. App. 1999).

Mr. Duke also alleges that BFI violated the TTPA because BFI "willfully acquired or maintained...monopoly power" in the Memphis market for commercial waste hauling services. In order to establish a claim for monopolization, a plaintiff must show "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." **United States v. Grinnell Corp.et al.**, 384 U.S. 563, 570-71(1966). Monopoly power is "the power to control prices or exclude competition," **United States v. E.I. du Pont de Nemours & Co.**, 351 U.S. 377, 391 (1956), and is also referred to as a high degree of "market power," **see, e.g., Tops Mkts., Inc. v. Quality Mkts., Inc.**, 142 F.3d 90, 97 (2d Cir.1998). Consequently, in order to succeed on his claim, Mr. Duke must show that BFI has "engaged in improper conduct that has or is likely to have the effect of controlling prices or excluding competition, thus creating or maintaining market power." **PepsiCo, Inc. v. Coca-Cola Co.**, 315 F.3d 101, 108 (2d Cir.2002) (per curiam).

To recover for attempted monopolization, a plaintiff must establish "(1) that the defendant has engaged in predatory or anti-competitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." **Spectrum Sports, Inc. v. McQuillan**, 506 U.S. 447, 456 (1993). Because our analysis applies with equal force to Mr. Duke's claim for attempted monopolization, we need not treat that claim separately.

Here, Mr. Duke relies, *inter alia*, upon the Competitive Impact Statement ("CIS") to establish a genuine dispute of material fact concerning whether BFI exercised monopoly power in Memphis' waste hauling market. Specifically, Mr. Duke wishes to rely upon the CIS to show that BFI's market share was in excess of 60%. The CIS at issue was filed, on February 15, 1996, as part of a consent decree in a federal court action between BFI and the Department of Justice, and was an exhibit to the Complaint in this case. In its Order granting summary judgment, the trial court

-6-

specifically states that it "did not consider the allegations of the complaint as well as the exhibits to the complaint." Even if we assume, *arguendo*, that the trial court erred in excluding the CIS, the record in this case clearly shows that BFI's market share actually declined during the relevant time period. In his deposition, Waste Management representative Chris White testified, in pertinent part, as follows:

> Q. We talked about market shares. Do you know how the market share for BFI has changed since 1995 to the present [January 9, 2002] in commercial service?
>
> \* \* \*
>
> A. My observation is that it has decreased.
>
> Q. It has?
>
> A. Decreased.
>
> Q. What has decreased?
>
> A. Well, you asked the question what is my perception of [BFI's] market share in the commercial service and my perception is, unqualified, that their market share has decreased.
>
> Q. And has–that's been over the period '94, '95 to the present?
>
> A. Yes.

There is no evidence in the record to refute Mr. White's assertion that BFI's market share actually declined during the relevant period. In *Arthur S. Langenderfer, Inc. v S.E. Johnson Co.*, 917 F.2d 1413 (6th Cir. 1990), our own Sixth Circuit made the following observation concerning monopolization and declining market share:

> Market strength is often indicated by market share. During the relevant period, [defendant]'s market share declined from approximately 40% to approximately 30%. Given the facts of the case, such a share is not sufficient to establish [defendant]'s capacity to monopolize. *See United States v. Empire Gas Corp.*, 537 F.2d 296 (8th Cir.1976), cert. denied,429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977) (50% market share does not establish dangerous probability of success); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255 (7th Cir.1981), cert. denied,455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982) (30% market share is not enough). The fact that

[defendant]'s share of the market was declining also belies whatever inference of capacity to monopolize that may be drawn from the size of its market share. ***Forro Precision, Inc. v. International Business Machines Corp.***, 673 F.2d 1045, 1058 (9th Cir.1982); ***Lektro-Vend Corp. v. Vendo Co.***, 660 F.2d 255, 271 (7th Cir.1981), cert. denied,455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982); ***Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.***, 614 F.2d 832, 841 (2d Cir.1980).

***Id.*** at 1431 (quoting ***Richter Concrete Corp. v. Hilltop Concrete Corp.***, 691 F.2d 818, 826 (6th Cir. 1982)).

Furthermore, it is undisputed in the record that Waste Management was working in the Memphis market as a BFI competitor, and that BFI's price for commercial waste hauling was generally cheaper than Waste Management's price point:

Q [To Waste Management representative Chris White]. Now, just as a general matter during the time that you have been at Waste Management in Memphis, have Waste Management's prices been to your knowledge high relative to the other competitors in the market?

\*                              \*                              \*

A. We've never been the low-cost provider in the market.

Q. To your knowledge, and I'm now referring specifically to the '94 to '96, '97 time period, to your knowledge were Waste Management's prices generally somewhat higher than BFI's highest prices in this area [commercial waste hauling]?

A. Yes.

In addition to BFI, the Memphis Yellow Pages for 1994 lists at least four other companies offering commercial waste hauling services. The 1995-1996 Yellow Pages indicates that the four companies listed in 1994 were still in business, and that at least one other commercial waste hauler had entered the Memphis market. Concerning whether these other companies created a competitive environment in the Memphis waste hauling arena, Mr. Mark Brantley, BFI's former manager, testified as follows:

Q. Did you [Mr. Brantley] perceive the Memphis hauling market, when you were here from 1992 to '95, to be competitive?

A. Yes.

-8-

*                              *                              *

Q. In what way?

A.  It was very competitive in terms of the competition in the marketplace.  It was very aggressive.

Q.  Was that true for trying to get the business of commercial customers within the Memphis area?

A.  Yes.

Q.  Would you describe it as–was it price competitive?

A.  Extremely.

Mr. Brantley's testimony is corroborated by the testimony of Mr. James Becher, president of ECO Services, one of the competitor companies that came into the Memphis market in 1992.  Mr. Becher testified that his salespeople regularly made cold calls to seek out potential new customers.

In addition to the competition that existed in the market, the record also indicates that BFI customers, including Mr. Duke, were able to negotiate the terms of the form-contracts used by BFI. Mr. Duke's deposition testimony reads, in pertinent part, as follows:

Q [To Mr. Jerry Duke].  What were the terms of the agreement that you reached with the representative of BFI?

A.  Their basic contract with a couple of changes.

Q.  What changes?

A.  The term of the initial contract from three years to one year and the length of the automatic renewal time from three to two–excuse me, three to one.

Q.  Who asked for those changes?

A.  I did.

Q.  Were they [BFI] agreeable?

A.  Well, it is the only way that I could see myself entering that agreement.

Q. My question is, did they agree to your changes?

A. Yes.

When asked if other commercial customers were able to negotiate their contracts with BFI, Mr. Duke further testified as follows:

Q. Do you believe that there are other members of the class who, like you, negotiated the initial three-year term down to one year or two years?

A. I would think that there would be a number of them that did make changes, were able to make changes.

Q. Why do you believe that?

A. Because I was able to make a change.

Q. And you were able to make a change because the standard contract terms were negotiable?

A. We made the change, yeah.

Q. That means the terms were negotiable, right?

A. That's correct.

Q. It is your belief that other members of the class also could negotiate over the terms of the contract just like you did.

A. I'm sure they did.

From the record before us, it is undisputed that there were no barriers to entry into the Memphis commercial waste hauling business during the relevant time period. Although BFI did, at times, possess the lion's share of the market, the record indicates that there was ample competition, and that BFI's share of the market decreased during the relevant period. In terms of BFI's business tactics, the record clearly indicates that BFI was open to negotiations in reaching agreements with its commercial customers. From the undisputed facts in this record, we cannot conclude that BFI violated the TTPA in its use of form-contracts, or in its monopolization or attempted monopolization of the waste hauling market.

**TCPA**

The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." T.C.A. § 47-18-104(a) (2005). The TCPA also creates a private right of action, to wit:

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

T.C.A. § 47-18-109(a)(1) (2005).

In the instant case, Mr. Duke asserts that BFI's alleged anti-competitive conduct (i.e. monopolization or attempted monopolization of the Memphis commercial waste hauling market) constitutes "an unfair and deceptive practice predominantly and substantially affecting the conduct of trade and commerce in the State of Tennessee, in violation of the [TCPA]." Mr. Duke relies upon the case of ***Blake v. Abbott Labs., Inc.***, No. 03A07-9509-CV-00307, 1996 WL 134947 (Tenn. Ct. App. Mar. 27, 1996) for the proposition that the TCPA applies to anti-competitive conduct. In ***Blake***, the plaintiffs asserted claims under both the TTPA and the TCPA stemming from defendant's alleged conspiracy to fix the price of baby formula. After determining that the TTPA claim was valid, this Court addressed the TCPA claim, and specifically "whether price fixing is an unfair and deceptive act or practice." The Court concluded that price fixing is an "unfair" practice forming the basis of a TCPA claim, and that application of the TCPA is not inconsistent with application of the TTPA.

Faced with a similar case in which the plaintiff also relied upon ***Blake***, this Court, in the ***Bennett*** case, distinguished ***Blake*** (in which anti-competitive conduct formed the basis for a TTPA claim) from cases, such as the one at bar (in which defendant's conduct is outside the scope of the TTPA, *see supra*):

> [T]he Blake Court held that anti-competitive conduct which forms the basis for a TTPA claim necessarily forms a valid basis for a TCPA claim. Anti-competitive conduct which falls outside the scope of the TTPA cannot be used to form the basis for a TCPA claim. Rather than supporting plaintiff's argument, Blake would bar the plaintiffs' TCPA claim because plaintiffs allegations of anti-competitive conduct failed to form the basis of a valid TTPA claim.

***Bennett***, 2006 WL 770467 at *6.

Having found that the TTPA is not implicated in this case, the ***Bennett*** Court's reasoning also applies here, and we conclude that the TCPA is not applicable. ***See also Sherwood v. Microsoft***

*Corp.*, No. M2000-01850-COA-R9-CV, 2003 WL 21780975, *33 (Tenn. Ct. App. July 31, 2003) (holding that "claims based on anticompetitive conduct are not cognizable under the TCPA").

**Common Law Claims**
**Breach of Duty of Good Faith and Fair Dealing**

In addition to his statutory claims, Mr. Duke also asserts that BFI breached its contractual duty of good faith and fair dealing. We first note that a "[b]reach of the implied covenant of good faith and fair dealing is not an independent basis for relief," but rather "may be an element or circumstance of recognized torts, or breaches of contracts." *Solomon v. First Nat'l Bank,* 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989). *Cf.* T.C.A. § 47-1-203 note 2. The fact that Mr. Duke's Complaint asserts an independent claim for breach of good faith and fair dealing should negate that cause of action. However, even if we assume *arguendo* that this claim can stand alone, we nonetheless conclude that a claim for breach of good faith and fair dealing cannot lie in this case. Mr. Duke's Complaint specifically asserts that:

> Defendant BFI[] in Memphis has entered into written contracts with the vast majority of its existing small container customers in those markets. Many of these contracts contain terms that, when taken together in the relevant markets where Defendants have market power, make it more difficult and costly for customers to switch to a competitor of Defendants and allow Defendants to bid to retain customers approached by a competitor. These contracts enhance and maintain Defendants' market power in the relevant markets by significantly raising the cost and time required by a new entrant or small incumbent firm to build its customer base and obtain efficient scale and route density. Therefore, Defendants' use and enforcement of these contracts in the Memphis market raises entry barriers in those markets.

Although the Complaint goes on to list the specific contract terms that allegedly violate BFI's duty of good faith and fair dealing, the Complaint does not specify any breach of this covenant in BFI's enforcement of the contract.

It is true that there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement, and a person is presumed to know the law. *See* Restatement (2d) Contracts, § 205 (1979). What this duty consists of, however, depends upon the individual contract in each case. In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable. However, it should be noted that the common law duty of good faith and fair dealing goes to the performance or enforcement of the contract, not to its execution. *See* Restatement (Second) of Contracts, § 205 cmt. c (1979); *Sanders v. First Nat'l Bank*, 114 Bankr. 507 (M.D. Tenn. 1990), aff'd, 936 F. 2d 273 (6th Cir. 1991). Because Mr. Duke's claim is based upon the terms of the contract, i.e. its formation,

rather than the enforcement of the contract, we conclude that there has been no breach of good faith and fair dealing in this case.

## Unjust Enrichment

It is well settled that the theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn.1966). Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist. *Whitehaven Community Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn.1998) (citing *Paschall's*, 407 S.W.2d at 154-55). Such contracts are not based upon the intention of the parties but are obligations created by law and are "founded on the principle that a party receiving a benefit desired by him, under the circumstances rendering it inequitable to retain it without making compensation, must do so." *Paschall's*, 407 S.W.2d at 154. A contractual obligation under an unjust enrichment theory will be imposed when: (1) no contract exists between the parties or, if one exist, it has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation. *Holloway*, 973 S.W.2d at 596. In *Paschall's*, *supra*, the Court stated:

> Each case must be decided according to the essential elements of quasi contract, to-wit: A benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.

407 S.W.2d at 155.

In this case, there is no dispute that the relationship between BFI and the Plaintiffs is grounded in their contract. Nonetheless, Mr. Duke contends that the issue is not whether the parties' relationship is governed by a contract, but rather "whether the contract is the subject matter of the action." Here, Plaintiffs argue that the subject matter of the action is the claim for unfair and deceptive trade practices, not the contract. We disagree. The gravamen of the subject matter at issue between these parties is BFI's provision of waste hauling services, and that subject matter is governed by the contract between the parties. Consequently, the equitable remedy of unjust enrichment cannot be imposed where, as in this case, a valid contract exists on the same subject matter.

Mr. Duke's argument that he is entitled to a finding of unjust enrichment because the contract between Mr. Duke and BFI may have been "unenforceable or invalid" is likewise unpersuasive. Specifically, Mr. Duke asserts that the contract was void and unenforceable because "the form contracts were themselves restraints on trade." In order to show that the contract is unenforceable or invalid as a restraint on trade, Mr. Duke would have to show that BFI's contract led to monopolization of the market (or an attempted monopolization of the market). As discussed above,

-13-

there is insufficient evidence in this record to support such a finding.  Consequently, summary judgment was correct on the claim for unjust enrichment.

For the foregoing reasons, we affirm the Order of the trial court granting summary judgment in favor of BFI.  Costs of this appeal are assessed against the Appellant, Jerry Duke d/b/a Moscow Manor Apartments, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.