# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### OCTOBER 23, 2008 Session

## STEVEN AMODEO, D.C., ET AL. v. CONSERVCARE, LLC., ET AL.

### Direct Appeal from the Circuit Court for Shelby County
#### No. CT-001172-03     Jerry Stokes, Judge

---

### No. W2007-02610-COA-R3-CV - Filed March 20, 2009

---

In this appeal, we are asked to determine whether the trial court erred in granting summary judgment in favor of Appellees as to Appellants' claims of civil conspiracy; violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104(b)(8), (27); violation of the Health Maintenance Organization Act of 1986, Tenn. Code Ann. § 56-32-229(a); and common law claims of outrageous conduct and tortious interference with another's business. We are also asked to determine whether the trial court erred in dismissing Appellants' Tennessee Trade Practices Act claims. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Bruce D. Brooke, Memphis, TN, for Appellants

Michael Richards, Memphis, TN, for Appellee, Health Choice, LLC

Randall N. Songstad, Arlington, TN, for Appellee, Terry J. Hanson, D.C.

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Health Choice, LLC ("Appellee Health Choice" or "Health Choice") is a third party administrator of managed health care plans and contracts with employers, insurance companies, other third-party providers, and other health networks to provide health care treatment by providers affiliated with Methodist Health Systems. According to William R. Breen, Jr., Appellee Health Choice's CEO, Health Choice benefitted its healthcare providers by "marketing the network to a client, helping him or her resolve claim issues, educating them about the contract . . . . and credentialing with the various pay[o]rs."

ConservCare, a chiropractic managed care organization, was formed in 1998 by Drs. Richard L. Cole, Don E. Cole, and Terry J. Hanson ("Appellee Hanson"). According to Appellee Hanson, ConservCare was born out of a frustration with the way chiropractic benefits were handled and in "an attempt to bring some quality measures and [standardized care] to the chiropractic world."

In his Brief, Appellee Hanson stated that ConservCare was approached by Health Choice "to credential chiropractors and educate Health Choice generally regarding chiropractic care. . . . in an effort to save costs, standardize care and facilitate credentialing." Under this arrangement between Health Choice and Conservcare, only chiropractors who were members of ConvervCare's panel would be considered in Health Choice's "in-network" for purposes of reimbursement. Subsequently, on August 3, 1998, Health Choice sent a letter to its panel members–its current "in-network" chiropractors–including some of the chiropractor Appellants, notifying them of Health Choice's contract with ConservCare. The letter explained that the "change was necessary to reduce costs associated with the credentialing and maintenance of individual providers and to provide an efficient mechanism to assist in the management of [Health Choice's] provider network." The transition to ConservCare providing Health Choice's chiropractic provider panel was to take effect August 31, 1998, but the effective date was later extended to January 1, 1999. According to the Affidavit of Appellant, Michael Bast, D.C., "[s]everal of the Plaintiffs then attempted to apply for membership on ConservCare's panel as chiropractors associated with ConservCare and each application was rejected and none of the Plaintiffs were allowed to participate as members of ConservCare."

On March 3, 2003, fifteen Shelby County chiropractors[1] filed a Complaint in circuit court against ConservCare, Drs. Richard L. Cole, Don E. Cole, and Appellee Terry J. Hanson, and Appellee Health Choice.[2] The Complaint alleged many causes of action, including numerous common law claims against both Appellees, violations of the Tennessee Trade Practices Act

---

[1] Subsequently, four of the plaintiff chiropractors were voluntarily dismissed from the lawsuit: Richard Amodeo, D.C., Craig Gangwish, D.C., Mark E. Holliman, D.C., and John Stacks, D.C. Curiously, Craig Gangwish, D.C., who filed a Notice of Voluntary Dismissal, is listed as an Appellant on appeal, while Jennifer James, D.C., who was an original plaintiff and not voluntarily dismissed, is not listed as an Appellant on appeal.

[2] ConservCare and Drs. Richard L. Cole and Don E. Cole are not parties to this appeal; thus, we will not discuss the procedural record as it pertains to such defendants.

("TTPA") against Appellee Health Choice, and violations of the Tennessee Consumer Protection Act ("TCPA") against ConservCare.

On August 22, 2006, Appellee Health Choice filed a motion for summary judgment arguing that both Plaintiffs' common law tort and TTPA claims were barred by the applicable statutes of limitation. On that same date, Appellee Health Choice filed a motion to dismiss Plaintiffs' TTPA claims and memorandum in support thereof, contending that Plaintiffs failed to state a claim under the TTPA, as the TTPA applies only to "articles" and not intangible contract rights or services. On September 14, 2006, Appellee Hanson filed a notice of joinder, joining Appellee Health Choice's motion for summary judgment concerning Appellants' common law tort and TTPA claims. In a December 4, 2006 Order, the circuit court held its ruling on Appellees' motions in abeyance to allow additional discovery. However, on April 3, 2007, the circuit court granted the motions for summary judgment and to dismiss. In so ruling, the circuit court found

> [P]laintiffs had actual notice that they would be excluded from the chiropractic panel of Health Choice as early as August 31, 1998 and at least by January 1, 1999 and that the causes of action set forth for tort claims are barred since the lawsuit was not filed until four years after Plaintiffs had actual notice.
>
> The Court further finds that [the TTPA] applies only to goods or articles and does not apply to the provision of chiropractic services including the provision of chiropractic treatment or intangible contract rights based upon the decisions of *Jo [A]nn[] Forman, Inc., et al. v. National Council on Compensation Insurance, Inc.*, 13 S.W.3d 365 (Tenn. Ct. App. [M].S. 1999) and *McAdoo Contractors, Inc. v. Harris*, 439 S.W.2d 594 (Tenn. 1969).

Finally, on October 23, 2007, the circuit court entered an Order Directing Entry of Final Judgment for Defendants Terry J. Hanson, D.C. and Health Choice, LLC Pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.[3] It is from this order which Appellants now appeal.

## II. ISSUES PRESENTED

Appellants have timely filed their notice of appeal and present the following issues for review, as we perceive them:

---

[3] The October 23, 2007 Order Directing Entry of Final Judgment for Defendants Terry J. Hanson, D.C. and Health Choice, LLC Pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure failed to comply with Rule 58 of the Tennessee Rules of Civil Procedure. Thus, after an Order from this Court requiring Appellants to obtain such, the circuit court entered, on December 17, 2008, an Order Directing Entry of Final Judgment for Defendants Terry J. Hanson, D.C. and Health Choice, LLC Pursuant to Rule 54.02 and Evidencing Compliance with Rule 58 of the Tennessee Rules of Civil Procedure Entered *Nunc Pro Tunc*.

1.	Whether the trial court erred in granting summary judgment by finding Appellants' TTPA and common law tort claims barred by the applicable statutes of limitation;

2.	Whether the trial court erred in dismissing Appellants' TTPA claims, finding that the TTPA applies only to goods or articles and not the provision of chiropractic services;

3.	Whether the trial court erred in granting summary judgment as to Plaintiffs' TCPA claim; Plaintiffs' claim under Tennessee Code Annotated section 56-32-229(a) for violation of the Health Maintenance Organization Act of 1986; and Plaintiffs' other common law claims.

Additionally, Appellees present the following issue for review:

4.	Whether Plaintiffs' exclusion from Appellee Health Choice's Managed Care Plan was lawful and expressly authorized by Tennessee Code Annotated section 56-32-229(a).

For the following reasons, we affirm the decision of the circuit court.


### III.  STANDARD OF REVIEW

We are asked to review the trial court's grant of summary judgment in favor of defendants. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. Ruling on a motion for summary judgment does not involve disputed issues of fact, but only questions of law. **Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.**, 59 S.W.3d 63, 68 (Tenn. 2001). Thus, our standard for reviewing a grant of summary judgment is *de novo* with no presumption of correctness as to the trial court's findings. **See Webber v. State Farm Mut. Auto. Ins. Co.**, 49 S.W.3d 265, 269 (Tenn. 2001). The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the non-moving party's favor. **Staples v. CBL & Assocs.**, 15 S.W.3d 83, 89 (Tenn. 2000).

Likewise, we are asked to determine whether the trial court erred in ruling on a motion to dismiss for failure to state a claim upon which relief could be granted, which is also a question of law. **Doe v. Catholic Bishop for Diocese of Memphis**, No. W2007-01575-COA-R9-CV, 2008 WL 4253628, at *3 (Tenn. Ct. App. Sept. 16, 2008) (citing *Farris v. Todd*, No. E1999-01574-COA-R3-CV, 2000 WL 528408, at *2 (Tenn. Ct. App. May 3, 2000)). Thus, we must review the trial court's dismissal de novo with no presumption of correctness. **Id.** (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)). "'[W]e must construe the [plaintiff's] complaint liberally in favor of the plaintiff, taking all of the allegations of fact therein as true[,]'" **Id.** (quoting *Randolph v. Dominion Bank of Middle Tenn.*, 826 S.W.2d 477, 478 (Tenn. Ct. App. 1991)), as "[a] motion to dismiss for failure to state a claim for which relief can be granted 'tests only the legal sufficiency of the complaint[.]'" **Id.** (quoting *Stein*, 945 S.W.2d at 716 (Tenn. 1997)).

## IV. DISCUSSION

### A. Summary Judgment Based on Statute of Limitations

On appeal, Appellants assert that the circuit court erred when it granted summary judgment to Appellees, finding that their civil conspiracy claim was barred by the applicable statutes of limitation.[4] Specifically, Appellants argue that summary judgment was inappropriate as Appellees' activities constituted a continuing civil conspiracy, such that the statute of limitations did not commence until the last overt act of the conspiracy was committed, and because the Plaintiffs who were never Health Choice "in-network" providers did not receive notice of Appellees' actions through receipt of the August 3, 1998 letter.

We need not address Appellants' contentions, as we find no civil conspiracy occurred. "The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (citing *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 720 (E.D. Tenn. 2001)). We find that the Health Maintenance Organization Act of 1986 ("HMO Act"), Tennessee Code Annotated section 56-32-229,[5] expressly authorizes Appellees' actions, such that Appellees actions were not unlawful. Tennessee Code Annotated section 56-23-229 provides

> (a) The managed health insurance issuer shall not discriminate with respect to participation, referral, reimbursement of covered services or indemnification as to any provider within a class of providers who is acting within the scope of the provider's license or certification under state law, solely on the basis of such license or certification. In selecting among providers of health services for membership in a provider network, the managed health insurance issuer or other network shall not discriminate against a class of providers who provide services that are covered by the plan by prohibiting such class of providers from membership in the provider network. *This section*

---

[4] In their motion for summary judgment, Appellees argued that Appellants' common law tort and TTPA claims were barred by the applicable statute of limitations. In granting summary judgment the court stated that "the causes of action set forth for tort claims are barred [by the statutes of limitation;]" however, the trial court further stated that Appellants' TTPA claims failed, as the TTPA did not apply to the provision of chiropractic services. Therefore, while it seems the trial court found all of the common law tort claims time-barred, it is unclear whether the court dismissed the TTPA claim based only on the article/service distinction, or included the TTPA claim as a "tort" claim which was, likewise, time-barred. However, we will not address this ambiguity, as Appellants' Brief addresses only the appropriateness of the dismissal of Appellants' civil conspiracy claim as time-barred.

[5] Tennessee Code Annotated sections 56-32-201 - 56-32-238, were redesignated as sections 56-32-101 - 56-32-138, by the code commission in 2008. Tennessee Code Annotated section 56-32-229 now appears in Tennessee Code Annotated section 56-32-129. In this case, we will cite to 56-32-229.

*shall not be construed as prohibiting managed health insurance issuers from including providers or classes of providers only to the extent necessary to meet the needs of the managed health insurance issuer's plan and its enrollees, or from limiting referrals or establishing any other measure designed to maintain quality and control costs consistent with the responsibilities of the plan.* This chapter shall not be construed as creating coverage for any service that is not otherwise covered under the terms of the managed health insurance issuer's plan.

(b) As used in this section, "class of providers" means optometrists, ophthalmologists, podiatrists and chiropractors.

**Tenn. Code Ann. § 56-32-229 (2002)** (emphasis added).

Because Appellees have "affirmatively negate[d] an essential element of [Appellant's] claim[,]" ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 5 (Tenn. 2008) (citation omitted),–that Appellees conspired "to accomplish . . . an unlawful purpose, or a lawful purpose by unlawful means,"–***Kincaid***, 221 S.W.3d at 38, summary judgment was appropriate as to Appellants' civil conspiracy claim.

Appellants' Reply Brief attempts to create an issue of material fact as to whether the purported reason for contracting with ConservCare–to "reduce costs associated with the credentialing and maintenance of individual providers and to provide an efficient mechanism to assist in the management of [Health Choice's] provider network"–was, in fact, Appellees' motivation.[6] In this attempt, Appellants point out that Metro Care, who performed credentialing for Health Choice's professionals prior to ConservCare, utilized licensure as the primary credential for inclusion on Health Choice's panel, without considering experience and malpractice claim history. Likewise, Appellants point to Mr. Breen's deposition testimony wherein he admitted that he had no "personal knowledge of any expertise, educational prowess, distinction of any Conservcare chiropractor in distinction to any other chiropractor in the community." We find that such testimony does not create a genuine issue of material fact as to whether Appellees' conduct is authorized by Tennessee Code Annotated section 56-32-229. Instead, we find it supports Appellees' contention that Health Choice contracted with ConservCare precisely because Health Choice did not understand chiropractic credentialing.

### B. Tennessee Trade Practices Act

---

[6]See ***Hannan***, 270 S.W.3d at 5 ("The moving party has the ultimate burden of persuading the court that 'there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law.' *Byrd* [*v. Hall*], 847 S.W.2d [208,] 215 [(Tenn. 1993)]. If the moving party makes a properly supported motion, the burden of production then shifts to the non-moving party to show that a genuine issue of material fact exists. *Id.*").

Appellants next argue that the trial court erred in dismissing Appellants' TTPA claim, finding that the TTPA "applies only to goods or articles and does not apply to the provision of chiropractic services including the provision of chiropractic treatment or intangible contract rights[.]" Appellants assert that they properly claimed a violation of the TTPA as their patients constitute "products" and furthermore, they "sell numerous products and goods." Appellants identify forty-three "products" sold in their practices, including: ankle supports, cervical collars, cervical pillows, custom orthotics, custom seat cushions, daily health supplements, diathermy, disposable cold/hot packs, elbow supports, exercise tubing, foot reflex wheels, heel lifts, knee braces, lumbar support belts, orthotic braces and supports, ultrasounds, vitamins and minerals, and wrist splints.

"The law is well settled that the TTPA applies only to tangible goods, not intangible services." ***Bennett v. Visa U.S.A., Inc.***, 198 S.W.3d 747, 751 (Tenn. Ct. App. 2006). However, our courts have failed to "'expansively' constru[e] what is a 'product' or an 'article' within the meaning of Tennessee Code Annotated section 47-25-101." ***Jo Ann Forman, Inc. v. Nat'l Council on Comp. Ins., Inc.***, 13 S.W.3d 365, 372 (Tenn. Ct. App. 1999). In *Bennett*, debit card holders brought a class action suit against credit card companies alleging that these companies violated the TTPA by forcing merchants who accepted the companies' credit cards to also accept the debit cards issued by the companies' bankcard associations. *Id.* at 749. In arguing that the TTPA applied, the plaintiffs asserted that the defendants' conduct not only involved the service of credit card processing, but that it also indirectly affected product prices. *Id.* at 752. In holding that the TTPA did not apply, this court stated that the plaintiffs could not avoid the product or article requirement by merely alleging an "incidental effect upon products as a backdoor[.]" *Id.* This court recognized that the costs businesses pay for services necessarily influence the price at which those businesses must sell their products. *Id.* at 753. However, we held that a claim could not be asserted under the TTPA each time anti-competitive action influenced product prices. *Id.* To do so, we reasoned would "effectively expand[] the TTPA's scope to include those service industries." *Id.*

Likewise, we hold that Appellants' selling of approximately forty products in connection with their chiropractic services does not allow them to state a claim under the TTPA. To allow such a claim would expand the TTPA beyond the scope intended by the General Assembly and allow claims under the TTPA whenever a primarily service industry provides a product ancillary to such a service.[7] Additionally, we find that patients are not "products" within the meaning of the TTPA. We are not persuaded by Appellants' claim that Appellee Hanson and Dr. Don E. Cole

---

[7] "In 1975 three different bills were introduced . . . . [and] [i]n 1978 HB2366 was introduced. . . . [which] would have expressly added 'services' to section 47-25-101." ***Jo Ann Forman, Inc.***, 13 S.W.3d at 372-73. "Senate Bill No. 1406, proposed in 1986, would have broadened the act to include 'trade or commerce' defined as 'all forms of economic activity.' Senate Bill No. 540, introduced in 1986, would have accomplished the same purpose." ***Id.*** at 373. "[T]he General Assembly has been presented with four opportunities to alter the *McAdoo* [*Contractor's, Inc. v. Harris*, 439 S.W.2d 594 (Tenn. 1969)] decision's construction of Tennessee Code Annotated section 47-25-101 [that the TTPA does not apply to intangibles] and has declined to do so on each of these occasions." ***Id.***

acknowledged patients to be products and furthermore, we are not convinced that either acknowledged such.[8]

### C.  Other Claims

Finally, Appellants claim that the trial court erred in granting summary judgment as to their TCPA claim; HMO Act claim, Tenn. Code Ann. § 56-32-229; and "Plaintiffs' other common law claims." We address each below.

#### 1.  Tennessee Consumer Protection Act

Appellants contend that the trial court erred in granting summary judgment in favor of Appellees as to Appellants' TCPA claim. In the "Facts" section of their Complaint, Appellants allege that "[t]he Defendants' unfair, deceptive, and monopolistic practices are contrary to the Tennessee Consumer Protection Act[.]" However, in their "Causes of Action" section Appellants allege only that "Defendant, ConservCare, has acted deceptively and falsely in advertising that all 'willing' chiropractor participants are allowed to participate in the IPA. Thus, Defendant, ConservCare, is in violation of the Consumer Protection Act, T.C.A. § 47-18-104, which prohibits unfair or deceptive trade practices[.]" Because Appellants' TCPA cause of action was not asserted against either Appellee Hanson or Appellee Health Choice, we will not address this issue.

#### 2.  Health Maintenance Organization Act of 1986

Appellants assert that the trial court also erred in granting summary judgment as to their HMO Act claim. In their Complaint, Appellants quote the HMO Act as providing:

> (a) The managed health insurance issuer shall not discriminate with respect to participation, referral, reimbursement of covered services or indemnification as to any provider within a class of providers who is acting within the scope of the provider's license or certification under state law, solely on the basis of such license or certification. In selecting among providers of health services for membership in a provider network, the managed health insurance issuer or other network shall not discriminate against a class of providers who provide services that are covered by the plan by prohibiting such class of providers from membership in the provider network.

**Tenn. Code Ann. § 56-32-229(a) (2002)**. However, Appellants fail to cite the remainder of the statute, which reads:

---

[8] In stating that his patients were "products" of referrals, Appellee Hanson used the term as synonymous with "result," rather than as contemplated by the TTPA. Likewise, in his deposition, Don E. Cole stated that he had "never considered a patient a product[,]" and only characterized the income and fees resulting from his patients as products.

*This section shall not be construed as prohibiting managed health insurance issuers from including providers or classes of providers only to the extent necessary to meet the needs of the managed health insurance issuer's plan and its enrollees, or from limiting referrals or establishing any other measure designed to maintain quality and control costs consistent with the responsibilities of the plan.* This chapter shall not be construed as creating coverage for any service that is not otherwise covered under the terms of the managed health insurance issuer's plan.

**Tenn. Code Ann. § 56-32-229(a) (2002)** (emphasis added).

Based on the portion omitted by Appellants, we find not only that Appellees are not in violation of such statute, but that the HMO Act expressly authorizes Appellees actions. Therefore, we find the trial court correctly granted summary judgment as to Appellants' HMO Act claim.

### 3. Common Law Claims

In their Brief, Appellants identify two common law claims which they maintain the trial court erred in dismissing: outrageous conduct and tortious interference with another's business. However, we find Appellants have failed to present a sufficient argument concerning the dismissal of these causes of action. Tennessee Rule of Appellate Procedure 27(a) provides that an appellant's brief

> shall contain . . . [a]n argument, which may be preceded by a summary of argument, setting forth the contention of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on[.]

"The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." ***Boggs Kurlander Steele, LLC v. Horizon Commc'ns***, No. M2006-00018-COA-R3-CV, 2008 WL 490628, at *4 (Tenn. Ct. App. Feb. 21, 2008) (citing *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 402 (Tenn. Ct. App. 2006); *see also Rector v. Halliburton*, No. M1999-02802-COA-R3-CV, 2003 WL 535924, at *9 (Tenn. Ct. App. Feb. 26, 2003) (per curiam); *Rhea County v. Town of Graysville*, No. E2001-02313-COA-R3-CV, 2002 WL 1723681, at *7 (Tenn. Ct. App. July 25, 2002)).

Appellants' Brief merely lists the elements of these causes of action and other case law defining the torts without providing any factual basis for the requested relief. These statements of law do not provide the "argument" and "appropriate references to the record" required by Tennessee Rule of Appellate Procedure 27(a). Thus, we find, under Tennessee Rule of Appellate Procedure

27(a), that Appellants have waived their right to have the dismissal of their outrageous conduct and tortious interference with another's business claims considered by this court.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to Appellants, Steven Amodeo, D.C., Michael Bast, D.C., Glenn R. Burford, D.C., William J. Cromer, D.C., Dwayne Curle, D.C., Tom Gill, D.C., David C. Hall, II, D.C., Michael C. Holliman, D.C., Ben Kemker, D.C., and Rock Wooster, D.C., and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.